# In the United States Court of Federal Claims

No. 19-595L
(Filed: November 9, 2021)

```
*************************************
JOHN MASON and PAMELA MASON      *
et al.,                          *
                                 *
              Plaintiffs,        *
                                 *    RCFC 15(a)(2); RCFC 15(c)(1)(B); Motion
         v.                      *    to Amend Complaint
                                 *
THE UNITED STATES,               *
                                 *
              Defendant.         *
*************************************
```

Thomas S. Stewart, Kansas City, MO, for plaintiffs.

Lucinda J. Bach, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Senior Judge

      In this Rails-to-Trails action, plaintiffs own real property adjacent to a rail corridor in Newton County, Georgia.[1]  The Central of Georgia Railroad Company and its predecessors held easements for railroad purposes that crossed their land.  Defendant then authorized the conversion of the railroad rights-of-way into recreational trails pursuant to the National Trails System Act, conduct that resulted in a taking in violation of the Just Compensation Clause of the Fifth Amendment to the United States Constitution.

      Currently before the court is plaintiffs' motion to amend their complaint pursuant to Rules 15(a)(2) and 15(c)(1)(B) of the Rules of the United States Court of Federal Claims ("RCFC").  Plaintiffs seek to substitute "Jasper Tenancy in Common c/o William Clyde Shepherd, III" in place of current plaintiff Wayne Clyde Shepherd, III.  For the reasons discussed below, the court grants plaintiffs' motion.

---

      [1] The named plaintiffs in this matter were initially designated as "William Callaway and Heather Callaway et al."  On September 28, 2021, the parties filed a joint stipulation dismissing several claims, including those of Mr. and Ms. Callaway.  The court has updated the case caption to reflect the remaining parties.

## I. BACKGROUND

Plaintiffs' motion concerns only one of the eight parcels originally at issue in this matter; the parties describe the disputed parcel as parcel number 7.[2] Plaintiffs introduced parcel number 7 in their second amended complaint, asserting that it was owned in fee simple by plaintiff Wayne Clyde Shepherd, III. 2d Am. Compl. ¶ 13. Soon, two issues arose regarding the parcel's ownership. First, the parties discovered that Mr. Shepherd's first name is William, not Wayne; they agree that this "minor clerical error . . . may be resolved without briefing." Pls.' Mot. 2 n.2; accord Def.'s Resp. 3 & n.1. Second, it became clear that Mr. Shepherd does not actually own the parcel in fee simple. Instead, Mr. Shepherd owns thirty percent of the parcel as a tenant in common. Pls.' Mot. 2. Plaintiffs refer to the owners of the parcel collectively as the "Jasper Tenancy in Common" or "Jasper TIC." Id. at 1.

The Jasper TIC is governed by an "Agreement Among Tenants in Common" ("Agreement"), effective December 16, 1988. Pls.' Ex. B. Through this Agreement, the owners

> agreed to certain limitations on their rights and powers to transfer their respective undivided interests in the Property and to certain other matters related to the acquisition, maintenance and possession of the Property and . . . further agreed among themselves to make certain anticipated future cash contributions related to the holding and maintenance of the Property.

Id. at 1. To meet these objectives, the owners established a Management Committee and identified initial members of the Committee from among them. Id. at 2. Decisions of the Management Committee must be approved by at least four of its members. Id. The Management Committee is "authorized to receive all proceeds of operation and ownership of the Property," id., specifically including proceeds from "capital events," id. at 3. However, the Committee is "not authorized to incur any other expenditures or to take any other action with respect to the Property except as expressly permitted herein or as may be approved by a majority in Equity Interest of the Owners." Id. at 2. The Agreement also clarifies the nature of the Jasper TIC and the owners' relationship to one another:

> (a) Owners do not intend, by this Agreement, to create a partnership or joint venture, but merely to set forth the terms upon which each Owner shall hold, make cash contributions in respect of and dispose of his respective Equity Interest.
>
> (b) No Owner is authorized to act as agent for any other Owner, to act on behalf of any other Owner, to do any act which will be binding on any other Owner, to obligate any other Owner for any payment, to enter into any purchase or

---

[2] The parties indicate that they have executed settlement agreements for the remaining seven parcels, that the settlements have been paid by the Judgment Fund, and that the settlements have been distributed to the applicable plaintiffs.

>loan commitment, or to incur any expenditures with respect to the Property, except as specifically agreed to the contrary herein.

Id.

In an effort to address the parcel's ownership, the Management Committee executed a "Resolution of Management Committee of Jasper Tenancy in Common" ("Resolution"), which became effective on July 7, 2021.  Pls.' Ex. C.  The Management Committee claimed to "designate W. Clyde Shepherd, III as the Committee's representative to pursue and collect just compensation for the taking of certain property . . . owned in common by Jasper Tenancy in Common, and currently subject to the proceedings of Case No. [19-595L], filed in the United States Court of Federal Claims."  Id. at 1.  The Committee also "ratif[ied] all decisions and actions taken by W. Clyde Shepherd, III concerning said proceedings on behalf of Jasper Tenancy in Common."  Id.  As authority for these actions, the Management Committee relied on section 2.4 of the Agreement, which gave the Committee "authority to receive all proceeds of operation and capital events with respect to owners' property . . . ."  Id.  In keeping with the Agreement, the Resolution was signed by four purported members of the Management Committee.[3]  Id.

The Resolution did not satisfy defendant's concerns regarding Mr. Shepherd's ability to pursue a takings claim on behalf of the Jasper TIC, preventing the parties from finalizing their settlement as to parcel number 7.  Thus, on August 9, 2021, plaintiffs filed their motion to amend the complaint.  The parties seem to agree that at common law, an individual owner may not assert a claim on behalf of an entire tenancy in common.  Def.'s Resp. 9-10; Pls.' Reply 5.  However, the parties disagree regarding the effect of the Agreement.  Plaintiffs maintain that the Agreement allows the Management Committee to authorize Mr. Shepherd to pursue claims on behalf of the Jasper TIC owners.[4]  Pls.' Reply 2-4.  Defendant, in contrast, maintains that the Agreement does not rectify the fact that the Jasper TIC is not a legally cognizable entity.  Def.'s Resp. 10.  Neither party requested oral argument, and the court finds it unnecessary.  This motion is now fully briefed and ripe for adjudication.

---

[3] Plaintiffs state that these four Management Committee members, and their percentages of ownership in the Jasper TIC, are:  William Clyde Shepherd, III (30.1%); Susan Knox Hofer (0.29%); Elizabeth Shepherd (3.8%); and James H. Shepherd, III, trustee (27.4796%).  Pls.' Ex. D at ¶ 13.

[4] In their motion, plaintiffs focus predominantly on whether the proposed amended complaint runs afoul of the statute of limitations.  They assert that because the proposed amendment "asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," RCFC 15(c)(1)(B), the amendment should relate back to the date the original complaint was filed.  Pls.' Mot. 4-5.  Defendant does not appear to disagree.  See Def.'s Resp. 10 ("Although Plaintiffs waited until long after the statute of limitations expired to seek leave to amend, the United States need not contest the applicability of the relation back provisions in RCFC 15.").

## II.  STANDARD FOR DECISION

Under RCFC 15(a)(1), parties may amend their pleadings once as a matter of course. Additional amendments to pleadings require "the opposing party's written consent or the court's leave."  RCFC 15(a)(2).  Courts should freely grant this leave "when justice so requires."  Id. However, the decision to grant leave to amend ultimately rests within the court's discretion. Zenith Radio Corp. v. Hazeltine Rsch., Inc., 401 U.S. 321, 331 (1971).  Circumstances that may merit denial of leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  Foman v. Davis, 371 U.S. 178, 182 (1962); see also Cultor Corp. v. A.E. Staley Mfg. Co., 224 F.3d 1328, 1333 (Fed. Cir. 2000) ("Futility of the proposed amendment is an adequate reason to deny leave to amend.").  The court considers a proposed amendment futile if the amendment could not survive a motion to dismiss.  Marchena v. United States, 128 Fed. Cl. 326, 330 (2016), aff'd, 702 F. App'x 988 (Fed. Cir. 2017).  Thus, evaluating the futility of such an amendment does not require "an extensive analysis of the merits of the proposed amendments." St. Paul Fire & Marine Ins. Co v. United States, 31 Fed. Cl. 151, 155 (1994).  The court must only decide whether the proposed amendment is "facially meritless and frivolous."  Id. (citing Alaska v. United States, 15 Cl. Ct. 276, 280 (1988)).

## III.  DISCUSSION

To resolve plaintiffs' motion to amend their complaint, the court must determine whether the Jasper TIC is the proper party to bring an inverse condemnation claim regarding parcel number 7 and, if so, whether plaintiffs have nonfrivolously alleged that the Jasper TIC was duly authorized to do so.  The first inquiry is guided by Georgia law and the Agreement.  Defendant argues that under Georgia common law, tenancies in common lack the capacity to sue.  Def.'s Resp. 9-10.  Although this proposition is correct as a general rule, the members of a tenancy in common are free to contract around the prohibition if doing so is not contrary to statue or public policy.  See Nat'l Cas. Co. v. Ga. Sch. Bds. Ass'n – Risk Mgmt. Fund, 818 S.E.2d 250, 254 (Ga. 2018) ("[C]ourts will not lightly interfere with the freedom of parties to contract on any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears." (quoting Bryan v. MBC Partners, L.P., 541 S.E.2d 124, 127 (Ga. Ct. App. 2000))).  Tenancies in common are not prohibited by statute from bringing suit, and suits by unincorporated organizations or associations are not against Georgia public policy—indeed, the Georgia Code explicitly authorizes such actions.[5]  Ga. Code Ann. § 9-2-24.

Defendant further contends that even if a tenancy in common can bring suit, the terms of the Agreement prevent the Jasper TIC from doing so, specifically pointing to the provision

---

[5] The Georgia Code does not provide a definition for "unincorporated organization or association."  Black's Law Dictionary defines an unincorporated association as "[a] gathering of people for a common purpose" or "[a]n unincorporated organization that is not a legal entity separate from the persons who compose it."  Association, Black's Law Dictionary (11th ed. 2019).

-4-

reflecting the owners' intent not to "create a partnership or joint venture." See Pls.' Ex. B at 2. This provision does not indicate that the owners opposed creating a legally cognizable entity for all purposes. A partnership is "an association of two or more persons to carry on as co-owners a business for profit." Ga. Code Ann. § 14-8-6. A joint venture is created when "two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control . . . , so as to render all joint venturers liable for the negligence of the other." Kissun v. Humana, Inc., 479 S.E.2d 751, 752 (Ga. 1997). A joint venture may also be thought of as "a partnership created for a limited purpose." Sadelmi Joint Venture v. Dalton, 5 F.3d 510, 513 (Fed. Cir. 1993). Indeed, depending on what rights and responsibilities the members of a joint venture assume, a joint venture may be more appropriately classified as a partnership. Accolades Apartments, L.P. v. Fulton Cnty., 549 S.E.2d 348, 350-51 (Ga. 2001). Thus, in clarifying the type of relationship they intended to create, the owners rejected two entity structures that are governed by very specific agency principles and are organized for profit. This is a logical limitation, consistent with the narrow goals articulated in the Agreement related to the "acquisition, maintenance and possession of the Property" for the "mutual convenience and protection" of the owners. See Pls.' Ex. B at 1. If the owners had intended to limit the Jasper TIC more strictly, avoiding creation of an unincorporated association or organization, they could have explicitly stated as much. E.g., Mabry v. Pelton, 432 S.E.2d 588, 589 (Ga. Ct. App. 1993) (considering a purchase agreement that specifically stated that the parties would not constitute "a partnership, joint venture, unincorporated association or other legal entity").[6] In short, the Agreement created an entity with the capacity to sue.

Thus, the court next addresses whether plaintiffs have nonfrivolously alleged that the Jasper TIC was duly authorized to bring an inverse condemnation claim regarding parcel number 7. The Management Committee views this suit as falling under its authority to "receive all proceeds of operation and capital events" related to the Jasper TIC. The Agreement does not offer conclusive definitions for these terms. It does, however, list examples of capital events: "sale, refinancing, condemnation or casualty proceeds not applied to costs of restoration." Pls.' Ex. B at 3. Plaintiffs argue that the term "condemnation" encompasses the inverse condemnation proceeding at issue here, and the court finds this interpretation reasonable.

Black's Law Dictionary describes "condemnation" broadly as "[t]he determination and declaration that certain property . . . is assigned to public use" or "the exercise of eminent

---

[6] For similar reasons, the court rejects defendant's concern that the Agreement prohibits an owner from acting as an agent for any other owner. See Def.'s Resp. 10 (citing Pls.' Ex. B at 2). The Agreement allows the Management Committee to exercise authority that could not be exercised by an individual owner. Even if the Management Committee's appointment of Mr. Shepherd to pursue an inverse condemnation claim on behalf of the Jasper TIC could be construed as falling under this section, there is a nonfrivolous argument that the appointment is an action "specifically agreed to the contrary" elsewhere in the Agreement, see Pls.' Ex. B at 2, and thus permitted.

domain by a governmental entity."[7]  Condemnation, Black's Law Dictionary, supra note 5.  Condemnation may be either direct or inverse.  Direct condemnation is a government-initiated proceeding to acquire title through eminent domain.  Knick v. Twp. of Scott, Pa., 139 S. Ct. 2162, 2168 (2019).  Inverse condemnation, in contrast, is initiated by the property owner "to recover the value of property which has been taken in fact by the governmental defendant."  Id. (quoting United States v. Clarke, 445 U.S. 253, 257 (1980)).  Both types of condemnation actions are inextricably linked to litigation, for "the exercise of eminent domain . . . requires a judicial proceeding in the form of a condemnation action to sue in superior court as well as the reciprocal to be sued for inverse condemnation."  Clark v. Fitzgerald Water, Light & Bond Comm'n, 663 S.E.2d 237, 239 (Ga. 2008) (quoting Fosky v. Vidalia City Sch., 574 S.E.2d 367, 371 (Ga. App. Ct. 2002)); see also Ga. Code Ann. §§ 22-1-1 to 22-2-142 (outlining condemnation procedures under Georgia law).  It seems unlikely that the owners would authorize the Management Committee to receive, manage, and distribute the proceeds of condemnation but would prohibit it from any involvement in the litigation that generates those proceeds.  Therefore, plaintiffs have nonfrivolously alleged in their proposed amended complaint that the Management Committee properly authorized Mr. Shepherd to represent the Jasper TIC for the narrow purpose of this inverse condemnation proceeding.[8]

---

[7] Black's Law Dictionary notes that "condemnation" may also be defined as "[a]n official pronouncement that a building is unfit for habitation."  Condemnation, Black's Law Dictionary, supra note 5.  This definition does not fit within the context of the Agreement, which regards capital events as events likely to result in net proceeds.  See Pls.' Ex. B at 3.  The decision by a municipality or county that a building is unsafe for human habitation is not typically such an event.  "Georgia law requires that compensation be paid when property is taken for a public purpose using eminent domain, but not when property is seized using the state's police power," as is the case when an uninhabitable building is condemned.  Oden, LLC v. City of Rome, Ga., 707 F. App'x 584, 589 (11th Cir. 2017); see also Pope v. City of Atlanta, 249 S.E.2d 16, 19 (Ga. 1978) (distinguishing use of eminent domain from use of the police power); Horne v. City of Cordele, 230 S.E.2d 333, 334 (Ga. Ct. App. 1976) (noting that a city could demolish a building found unfit for human habitation "without payment of just and adequate compensation only in the exercise of its police power").  The other definitions offered for "condemnation" by Black's Law Dictionary are more obviously inapplicable and need not be discussed here.

[8] As defendant emphasizes, the Management Committee must receive authorization from "a majority in Equity Interest of the Owners" before taking action related to the property that is not specifically authorized by the Agreement.  See Pls.' Ex. B at 2.  According to plaintiffs' proposed amended complaint, the four Management Committee members who signed the Resolution do, in fact, own a majority interest in the property.  Pls.' Ex. D at 4.  Because the court evaluates the alleged futility of plaintiffs' proposed amendment based on whether the proposed amendment could survive a motion to dismiss, the court accepts plaintiffs' assertion regarding the percentages of ownership as true for the purposes of this motion.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all the factual allegations contained in the complaint.").  Thus, even if the court

## IV.  CONCLUSION

While the court finds it unfortunate that plaintiffs waited so long to seek this amendment, the proposed amendment is not futile or otherwise improper, and defendant has not demonstrated that plaintiffs' delay caused it any prejudice.  The Jasper TIC is the proper party to pursue an inverse condemnation claim related to parcel number 7.  Accordingly, the court **GRANTS** plaintiffs' motion to amend their complaint.  By **no later than Tuesday, November 16, 2021**, plaintiffs shall file the amended complaint as a separate docket entry.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Senior Judge

---

were to consider this proceeding an action that required approval of owners with a majority in equity interest, that condition would be satisfied for present purposes.